IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| **JULIET CRUTHIRDS BOLLING** § | | **PLAINTIFF** |
| § | | |
| v. § | | Civil Action No. 1:10cv189-LG-RHW |
| § | | |
| **JIM HOOD; KENNETH N. ALLEN,** § | | |
| MSAGO Investigator; **JOHN DOES** § | | |
| **A-Z; and JANE DOES A-Z** § | | **DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER GRANTING
### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the Motion to Dismiss or Alternatively for Summary Judgment [12] that was filed by Jim Hood and Kenneth N. Allen. The plaintiff, Juliet Cruthirds Bolling, has filed a response and a supplemental response in opposition to the Motion, and the defendants have filed a reply. Upon reviewing the submissions of the parties and the applicable law, the Court finds that the Motion for Summary Judgment should be granted.

### FACTS

On June 26, 2007, JoAnn and Dallas Frisbee entered a contract in which Frisbee agreed to rebuild Kane's home, which was damaged by Hurricane Katrina. (Ex. 2 to Pl.'s Am. Compl.) William Revel and Juliet Bolling signed the contract as witnesses. (*Id.*) At the time that the contract was signed, Kane made a down payment of $15,000, writing two checks for $7500. (*Id.*) The checks were written to be paid to the order of Bolling, and were deposited in a checking account opened by Bolling. (Am. Compl. at 5). Bolling claims that the money was paid to her, because Frisbee's driver's license had expired, which prevented him from opening a checking account. (*Id.*)

On or about August 1, 2007, Kane filed a complaint with the Attorney General's Office of Consumer Protection, claiming that Frisbee's crew cut down a tree on her property, but no other work had been done.  She alleged that she had made several phone calls to Frisbee and Bolling, but Frisbee either avoided her or gave her excuses.  He refused to refund the $15,000.  The Attorney General's Office assigned Kane's complaint to investigator Kenneth Allen.

Allen has provided an affidavit to the Court, which describes his investigation. (Ex. C to Defs.' Mot. at 2).  He interviewed Kane, and based on this conversation, he believed that Bolling, Revel, and Frisbee were all involved in the contract negotiations. (*Id.*)  He determined that neither Frisbee nor Bolling nor Revel had a State of Mississippi Board of Contractors license.  (*Id.*)  After a consultation with a Special Attorney General for the Consumer Protection Division, it was decided that Bolling, Revel, and Frisbee should be charged with felony home repair fraud and misdemeanor contracting without a license.  (*Id.*)  He prepared an affidavit to present to a judge, with a request for warrants.  (*Id.*)  Justice Court Judge Melvin Ray reviewed the affidavit and signed warrants charging Frisbee, Revel, and Bolling with home repair fraud and contracting without a license.  (*Id.* at 3).  On November 27, 2007, Frisbee and Bolling were arrested.  (*Id.*)  Revel was already in jail in Tennessee on unrelated charges.  (*Id.*)  When Revel was returned to Mississippi, he informed Allen that neither Bolling nor he were involved in the contract negotiations, but he claimed that Bolling and Frisbee had gone on trips to New Orleans and Tennessee with Kane's money.  (*Id.*)

Allen then subpoenaed Bolling's bank records, which caused him to believe that "Bolling was fully participating with Dallas Frisbee in using JoAnn Kane's money for every purpose other than what i[t] was intended for." (*Id.*) On May 1, 2008, Allen testified before a Grand Jury, which returned indictments against Frisbee and Bolling. (Ex. C to Defs.' Mot. at 3.) The misdemeanor charges for contracting without a license against Revel and Bolling were dismissed, because they only signed the contract as witnesses. (*Id.* at 3; Ex. 6A to Am. Compl.) Frisbee entered an *Alford* plea to the felony home repair fraud charge, and in exchange for that plea, the district attorney's office agreed to pass the remaining home repair fraud charge against Bolling to the file. (Ex. 9 to Ex. C to Defs.' Mot.)

Bolling, who is acting *pro se*, has filed this lawsuit, alleging that the defendants acted recklessly and with gross negligence while conducting their investigation. She claims that she was deprived of her liberty, reputation, privacy, income, and emotional tranquility without due process. She further alleges that she was denied equal protection under the law. She seeks relief pursuant to 42 U.S.C. § 1983, the Fourth Amendment, the Fifth Amendment, the Fourteenth Amendment, 42 U.S.C. § 1985, 42 U.S.C. § 1986, and Mississippi law. She also seeks a permanent injunction requiring the defendants to dismiss the charges against her with prejudice and requiring the defendants to undergo "mandatory training and testing for their agents and themselves to insure they understand and comply with their legal duties with respect to the proper handling and use of evidence of a criminal investigation." (Am. Compl. at 10). She claims that the defendants' conduct caused her financial losses and

emotional distress. She seeks compensatory and punitive damages.

The defendants have filed the present Motion to Dismiss or Alternatively for Summary Judgment. Because Bolling and the defendants rely on documents outside of the pleadings, the Court will treat the Motion as a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(d).

## DISCUSSION

Any party to a civil action may move for summary judgment upon a claim, counterclaim, or cross-claim as to which there is no genuine issue of material fact and upon which the moving party is entitled to prevail as a matter of law. Fed. R. Civ. P. 56. A party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Celotex Corp.*, 477 U.S. at 324-25. The non-moving party may not rest upon mere allegations or denials in its pleadings but must set forth specific facts showing the existence of a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

### I. Absolute Immunity– Hood

Attorney General Hood argues that he is entitled to absolute prosecutorial immunity. At the summary judgment stage, "the moving party is not required to put

forth evidence to meet its summary judgment burden for a claim of immunity. It is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity." *Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003). Once the defendant asserts immunity, the burden shifts to the plaintiff to rebut it. *Cousin*, 325 F.3d at 632. "[P]rosecutorial immunity extends to conduct that is 'intimately associated with the judicial phase of the criminal process, . . . but not to 'those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings . . . .'" *Hoog-Watson v. Guadalupe Cnty., Tex.*, 591 F.3d 431, 438 (5th Cir. 2009) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). Thus, "prosecutorial immunity protects 'the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial,' but not 'the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested.'" *Hoog-Watson*, 591 F.3d at 438 (quoting *Buckley*, 509 U.S. at 273). Furthermore, prosecutorial immunity does not extend to "the prosecutorial function of giving legal advice to the police." *Id.*

Hood asserts in pleadings that he was at all times acting as an advocate for the State, and thus, he is entitled to absolute immunity. *See Cousin*, 325 F.3d at 632. Bolling does not allege any specific acts that were committed by Hood in her Amended Complaint, and there is no indication that he at any time acted outside of his role as an advocate for the State or that he was directly involved in the investigation of

Bolling. Thus, Bolling has not rebutted Hood's assertion of immunity, and her claims against Hood must be dismissed.

## II. Qualified Immunity–Allen

Qualified Immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 393 (5th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). A government official is "entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate that the defense does not apply. *McClendon*, 305 F.3d at 323. The Court will analyze whether Allen's conduct violated any of the following rights asserted by Bolling:

    A. Fourth Amendment

In her Complaint, Bolling complains that she should not have been arrested for home repair fraud or contracting without a license. "Claims of false arrest, false imprisonment, and malicious prosecution involve the guarantees of the fourth and fourteenth amendments when the individual complains of an arrest, detention, and prosecution without probable cause." *Thomas v. Kippermann*, 846 F.2d 1009, 1011 (5th Cir. 1988). "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a

reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. McCowan*, 469 F.3d 386, 390 (5th Cir. 2006). "The facts must be known to the officer at the time of the arrest; post hoc justifications based on facts later learned cannot support an earlier arrest." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009).

"[I]f facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994). However, the chain of causation remains intact if "it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988). "[T]he chain of causation is broken only where all the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Hand*, 838 F.2d at 1428. The Fifth Circuit has explained:

> In the context of evaluating the existence of probable cause and whether an officer is entitled qualified immunity, "we embark on a 'practical common- sense [determination] whether given all of the circumstances' a reasonable officer could have believed there is a fair probability [Plaintiff] committed the crime charged." *Mendenhall v. Riser*, 213 F.3d 226, 231 (5th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In considering the totality of the circumstances, we disregard any false statements in the affidavit supporting the warrant which are made knowingly and intentionally, or with reckless disregard for the truth, and consider omissions that may have been critical to a determination of probable cause. *Hale v. Fish*, 899 F.2d 390, 400 & n.3 (5th Cir. 1990).

*Hernandez v. Terrones*, No. 09-50659, 2010 WL 4116737 at *11 (5th Cir. Oct. 20, 2010). "If there was probable cause for any of the charges made . . . then the arrest was supported by probable cause, and the claim for false arrest fails." *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (quoting *Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995)).

In the present case, Bolling was arrested pursuant to a warrant, and she was indicted by a grand jury for felony home repair fraud. However, Bolling alleges that the grand jury indicted her based on a false affidavit signed by Allen. She claims that he falsely testified that she admitted to personally spending money from the account funded with Kane's money. She also claims that Allen failed to reveal that she was merely a witness to the home repair contract.

Under Mississippi law, "[a] person commits the offense of home repair fraud when he knowingly: (a) [e]nters into an agreement or contract, written or oral, with a person for home repair, and he knowingly: (i) . . . promises performance which he does not intend to perform or knows will not be performed . . . ." Miss. Code Ann. § 97-23-103(2). The defendants point out that the term "person" under the statute is defined to include "any individual, partnership, corporation, business, trust or other legal entity," they argue that Allen had reason to believe that Frisbee, Revel, and Bolling had formed a partnership for the purpose of defrauding Kane.

The Court has reviewed the affidavit on which the warrant to arrest Bolling was made. Allen did not state that Bolling had admitted to personally spending the money

paid by Kane. However, he did omit the fact that Bolling signed the home repair contract as a witness. (*See* Ex. A to Defs.' Mot). Nevertheless, Bolling was involved with the signing of the contract, and she took possession of the home repair funds. Furthermore, the home was never repaired. Therefore, the Court finds that there was sufficient evidence to establish probable cause to arrest Bolling. As a result, the Court finds that Allen is entitled to qualified immunity regarding Bolling's false arrest claim.

### B. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1. This is essentially a requirement that all persons similarly situated should be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Bolling has not alleged in any pleading filed with the Court that she was treated differently than other persons similarly situated, and there is no evidence to support her equal protection claim. Therefore, Bolling's right to equal protection has not been violated.

### C. Substantive Due Process

In *Albright v. Oliver*, 510 U.S. 266 (1994), the United States Supreme Court held that there is no Fourteenth Amendment "liberty interest" or substantive due process right to be free from criminal prosecution unsupported by probable cause. *Albright*, 510 U.S. at 270-71. "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process' must

be the guide for analyzing these claims.'" *Id.* at 273. Thus, the Court held that a plaintiff's claims based on prosecution without probable cause should be analyzed under the Fourth Amendment. *Id.* at 274. As a result, Bolling's right to substantive due process has not been violated.

### D. Procedural Due Process

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Bolling's claim that she was arrested without probable cause invokes the protections of the Fourth Amendment, rather than the due process clause of the Fourteenth Amendment. Therefore, her procedural due process claim must also be dismissed. *See Reynolds v. New Orleans City*, 272 Fed. App'x 331, 338 (5th Cir. 2008) (holding that a plaintiff's procedural due process claim for arrest without probable cause was properly dismissed since Constitutional claims must be addressed under the most applicable provision of the Constitution).

### E. Fifth Amendment

"The Fifth Amendment applies only to violations of constitutional rights by the United States or a federal actor." *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). Both Hood and Allen are state officials, and they were not acting on behalf of the federal government. As a result, Bolling's Fifth Amendment claim must also fail.

### F. 42 U.S.C. §1985 and §1986

Section 1985(1) prohibits conspiracies "to prevent, by force, intimidation, or threat" a federal officer from discharging his duties or to injure him because of his

lawful discharge of his duties. Clearly, Bolling is not a federal officer, and thus, she does not have a claim pursuant to subsection (1) of Section 1985.

Subsections (2) and (3) to Section 1985 prohibit conspiracies to obstruct justice, intimidate a party, witness, or juror and conspiracies to deprive persons of rights or privileges, respectively. Both of these subsections require a plaintiff to demonstrate some form of discriminatory animus on the part of the defendants. *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 687 (5th Cir. 2010). Bolling has not alleged that any of the defendants' actions were motivated by discriminatory animus; rather she has alleged that the defendants were arresting as many people as possible for home repair fraud in an attempt to advance their careers. As a result, Bolling does not have a claim pursuant to subsection (2) or (3) of Section 1985.

In order to state a claim pursuant to Section 1986, a plaintiff must have a claim pursuant to Section 1985. *Lockett v. New Orleans City*, 607 F.3d 992, 1002 (5th Cir. 2010). Therefore, Bolling's Section 1986 claim must also be dismissed.

## III. Official Capacity Claims

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend XI. Therefore, claims against a state may not be brought in federal court unless the state has waived its immunity or Congress has abrogated it pursuant to Section 5 of the Fourteenth Amendment. *Alden v. Maine*, 527 U.S. 706, 755-56 (1999); *Neinast v. Texas*, 217 F.3d 275, 280 (5th Cir. 2000)

("Congress has the power to abrogate [state sovereign] immunity under §5 of the Fourteenth Amendment, but only within its remedial powers under §5.").[1]

Eleventh Amendment immunity, where applicable, is shared by a state's agencies and officers to the extent that the state is the "real, substantial party in interest." *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147 (5th Cir. 1991). A lawsuit against a state officer in his official capacity is a lawsuit against the State. *Diamond v. Charles*, 476 U.S. 54, 57 n.2 (1986). Therefore, to the extent that Bolling has sued the defendants in their official capacities pursuant to Section 1983, her claims must be dismissed.

## IV.  Permanent Injunction

Bolling seeks a permanent injunction requiring the defendants to dismiss the charges against her with prejudice and requiring the defendants to undergo "mandatory training and testing for their agents and themselves to insure they understand and comply with their legal duties with respect to the proper handling and use of evidence of a criminal investigation." (Am. Compl. at 10).

The Eleventh Amendment does not bar lawsuits seeking an injunction against the enforcement of an unconstitutional state statute if the state officials sued have some connection with the enforcement of the act and are about to commence proceedings to enforce the unconstitutional act. *Okpalobi v. Foster*, 244 F.3d 405, 426-47 (5th Cir. 2001) (citing *Ex Parte Young*, 209 U.S. 123, 155-56 (1908)). "Remedies

---

[1] Section 5 provides: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. CONST. amend. XIV, §5.

designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. But compensatory or deterrence interests are insufficient to overcome the dictates of the Eleventh Amendment." *Green v. Mansour*, 474 U.S. 64, 68 (1985).

In the present case, Bolling has not alleged that Mississippi's home repair fraud statute or any other statute is unconstitutional. Furthermore, she has not claimed any continuing violation of federal law; she merely seeks to deter the defendants from conduct that may in the future harm her or others. As a result, the Court finds that the *Young* exception to Eleventh Amendment immunity does not apply to Bolling's request for a permanent injunction. Thus, that claim must also be dismissed.

## V. State Law Claims

The Mississippi Tort Claims Act provides the exclusive remedy for claims against state employees, as long as they are acting within the course and scope of their employment. Miss. Code Ann. § 11-46-7(1). The Act also states, "An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts and omissions occurring within the course and scope of the employee's duties." Miss. Code Ann. §11-46-7(2). Furthermore, the Act provides, "Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." Miss. Code Ann. §11-46-5(4). Bolling concedes in her Amended Complaint that the defendants were acting

-13-

within the course and scope of their employment. (Am. Compl. at 3). As a result, Bolling's state law claims against the defendants are also barred by the Eleventh Amendment. *See Hopkins v. Mississippi*, 634 F. Supp. 2d 709, 712-13 (S.D. Miss. 2009).

## VI. John and Jane Doe Defendants A-Z

Bolling has sued John and Jane Doe Defendants A-Z, but she has not attempted to name or serve these defendants. Since these are the only claims remaining in this lawsuit, Bolling will be given thirty days to name these John and Jane Doe defendants, or those claims will be dismissed.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary Judgment [12] that was filed by Jim Hood and Kenneth N. Allen is **GRANTED**. Bolling's claims against these defendants are hereby **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED** this the 6th day of December, 2010.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE